# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:

WALTER RUBIN DeCELIS,   Case No. 05-11844-RGM
(Chapter 7)
Debtor.

### MEMORANDUM OPINION

This case is before the court on the trustee's motion to sell real property owned by the debtor and Carlos Chevez free and clear of liens under §363(f) of the Bankruptcy Code. For the reasons stated below, the motion will be denied.

### Background

Walter R. DeCelis filed a petition in bankruptcy under chapter 7 of the Bankruptcy Code on July 18, 2005. He scheduled a house which he did not claim as exempt. He also scheduled Carlos Chevez as the co-obligor of the note secured by the house. The trustee filed a complaint against the debtor, Chevez and two others. He alleged in the complaint, which was filed without the benefit of a title examination, that "On or about August 3, 2004 Debtor acquired a fee simple interest in [the house] . . . On or after August 3, 2004, Defendant Chevez acquired an interest in the [the house]." He further alleged that on or about March 7, 2005, the debtor and Chevez conveyed the property to the other two defendants.[1] The deeds, the trustee alleged, were not recorded. The trustee sought to

---

[1] The trustee alleged that there was in intermediate transfer where the debtor and Chevez conveyed the house to the debtor and the other two defendants who then conveyed it solely to the other two defendants, all on the same day. The additional conveyance, while odd, is not relevant to the matters under consideration here.

1

avoid the transfers as fraudulent transfers under the Bankruptcy Code and the Virginia Code. The two additional defendants then conveyed the property to the debtor and Chevez, effectively putting the property back in the same ownership as before they became involved in the transactions. Chevez did not appear in the adversary proceeding and a default order drafted by the trustee's counsel was entered declaring "the transfer by Defendant DeCelis to Defendant Chevez of an interest in the [house] is void."

The trustee, still without a title examination, marketed the property and entered into a sales contract which he estimated would net the estate $81,400 after payment of liens of record, sales commissions and closing costs. His motion to sell was granted and he proceeded to settlement. The sale was authorized under Bankruptcy Code §363(b) but not §363(f).

The settlement agent obtained a title examination. He discovered that the debtor and Chevez acquired title as tenants in common from the same grantors in a single deed. There never had been a transfer from the debtor to Chevez. He questioned whether the default order voiding the nonexistent transfer from the debtor to Chevez accomplished anything. With the conveyance from the two additional defendants to the debtor and Chevez, he questioned whether the trustee who had the undoubted authority to sell the debtor's interest, had authority to sell Chevez' interest.

To remedy the situation, the trustee filed the present motion to sell the house free and clear of Chevez' ownership interest.[2]  11 U.S.C. §363(f). The trustee has had no contact with Chavez.

---

[2] The trustee first unsuccessfully tried to amend the default order to provide that "any interest of [Chevez] . . . is void." The complaint before the court only alleged avoidance claims under the Bankruptcy Code and the Virginia Code. The only relief sought was avoidance of the transfers. There were no allegations supporting any alternative theory that would invalidate Chevez' interest in the house.

Chevez did not respond to the motion. The trustee asserts that Chevez' silence is his consent to the sale under §363(f)(2).[3]

## Discussion

*In re Roberts,* 249 B.R. 152 (Bankr.W.D.Mich. 2000) discusses the meaning of "consents" in §363(f)(2). In this case, the property was encumbered by four different liens. There was clearly no equity in the property. The trustee sought to sell the property with the consent of the first lienholder for far less than the first lienholder's lien. The second lienholder objected but withdrew his objection and consented to the sale when the first lienholder agreed to carve out a small portion of the sales proceeds for the benefit of the second lienholder. The third and fourth lienholders did not respond to the motion to sell. *Id.* at 153-154. The trustee and the first lienholder asserted that the failure of the third and fourth lienholders to object constituted their consent to the sale. The effect of the sale was that neither the third nor the fourth lienholder received any proceeds from the sale of the property, their liens were extinguished, and it was unnecessary to proceed under Michigan foreclosure law which provided a right of redemption. The court stated:

> There is no indication within Section 363 itself or its underlying legislative history that Congress intended "consents" to have any meaning other than that which it is commonly understood to have. "Consent," when used as a verb, means "to give

---

[3]Section 363(f) states:

The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –
        (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
        (2) such entity consents;
        (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
        (4) such interest is in bona fide dispute; or
        (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

assent or approval." Webster's Third New International Dictionary (unabridged) (1986).

Trustee and [the first lienholder] have relied upon the legal artifice of implied consent to meet the requirement of Section 363(f)(2). However, their argument in reality is that "consents" and "fails to object" are synonymous. They are not. When a person consents to a particular action, that person has unequivocally manifested his or her affirmation of the proposed action through some discernable statement or act. In contrast, when a person fails to object to a proposed action, that person's affirmation can only be deduced from the lack of any statement or act which would suggest a contrary position. Obviously, such deductive reasoning always leaves open the possibility that the person's failure to object is attributable to some reason totally unrelated to that person's actual consent to the proposed act. For example, in the context of mass mailings to the creditor matrix, the person may have mistaken an important notice for junk mail and tossed it into the trash without even have read it.

Had Congress substituted "does not object" for "consents" in Section 363(f)(2), there would be no question that the lienholder had the obligation to act if it did not want the property to be sold free and clear of its lien. However, the concept of consent (i.e., to give assent) imposes no such duty upon the lienholder. To the contrary, "consent" obligates the trustee to approach the lienholder and secure the lienholder's assent if the trustee wishes to sell the property free and clear of the lien.

The Court recognizes that Congress intended to facilitate the administration of bankruptcy cases by permitting various activities to be pursued without an actual hearing provided that there was appropriate notice and an opportunity to be heard. The phrase "after notice and a hearing," which is interspersed throughout the Bankruptcy Code, including Section 363, contemplates this expedited procedure. 11 U.S.C. § 102(1)(B). However, Congress was quite specific as to what "after notice and a hearing" was to mean. . . .

In other words, Section 102(1)(B)(I) requires a party who opposes a proposed action to request a hearing. However, no such duty can be implied from the common meaning of the word "consent." If a party's consent is a prerequisite to proceeding with a proposed action, then that party should not have to request a hearing or otherwise object if it does not want the action to occur. Its silence should be sufficient.

The Court suspects that the confusion as to what constitutes consent for purposes of Section 363(f)(2) is in part due to the requirement that all sales of estate property outside the ordinary course, including sales free and clear of liens, must be authorized by the court after notice and a hearing. 11 U.S.C. § 363(b). It is tempting

      to conclude that Section 363(b) imposes upon the lienholder the same obligation that any other party-in-interest has to come forward and object if it disagrees with a proposed sale. However, Sections 363(b) and 363(f) address entirely different issues. Sections 363(b) and (c) both dictate the circumstances under which the trustee is generally authorized to use or dispose of the estate's property. In contrast, Section 363(f) sets forth the circumstances under which the trustee may have the additional authority to sell the property free and clear to the purchaser.

*Id.* at 155-156. *See also In re Silver,* 338 B.R. 277, 280 (Bankr.E.D.Va. 2004); *In re Takeout Taxi Holding, Inc.,* 307 B.R. 525, 534 (Bankr.E.D.Va. 2004).[4]

      The distinction between silence and consent is clear. Unless there is a duty to speak, silence signifies nothing. The Bankruptcy Code imposes no duty to respond to notices. The "notice and hearing" process permits the court to take certain actions if there is no objection. The procedure is necessary if any meaningful and timely administration of bankruptcy estates, either in liquidation or reorganization, is to be achieved. It assures that all necessary parties know what the proposed action is and that they are given an opportunity to participate. 11 U.S.C. §102(1). That, though, is different from consent, an act affirmatively approving the proposed action. Had Congress intended silence to be consent in §363(f)(2), it knew how to say so. It did not.

      The trustee in this case, as did the trustee in *Roberts,* argues that Chevez' failure to respond is consent under §363(f)(2). He relies on 3 *Collier on Bankruptcy* ¶363.06[3] (15th ed. 2006) and *Pelican Homestead v. Wooten (In re Gabel),* 61 B.R. 661 (Bankr.W.D.La. 1985) as his authority for his proposition that silence is consent under §363(f)(2). Collier states:

> The trustee may sell property of the estate free of liens or other interests when the holder of the lien or interest consents to such a sale. This provision is similar to section 9-315(a) of the Uniform Commercial Code, which permits a sale free of a security interest when the secured party consents to such a sale. The consent required is consent to a sale free of liens or interests, not merely consent to sale of the assets.

---

[4] Both *Silver* and *Takeout Taxi* were decided, quite independently of each other, on the same day.

The consent may be express or may be implied from circumstances surrounding the sale.[27]

Footnote 27 states:

> FutureSource LLC v. Reuters Ltd., 312 F.3d 281 (7th Cir. 2002), *cert. denied,* 538 U.S. 962, 123 S. Ct. 1769, 155 L. Ed. 2d 513 (2003) (failure to object may constitute consent, if there was adequate notice); Veltman v. Whetzal, 93 F.3d 517 (8th Cir. 1996) (failure to object to proposed sale, coupled with agreement to stipulation on authorizing sale free of interest, constituted consent); Citicorp Homeowners Servs., Inc. v. Elliot (*In re* Elliot), 94 B.R. 343 (E.D.Pa. 1988) (implied consent found); Hargrave v. Pemberton (*In re* Tabore, Inc.), 175 B.R. 855, 32 C.B.C.2d 1239 (Bankr.D.N.J. 1994) (failure to object to notice of sale or attend hearing deemed consent to sale for purposes of section 363); *In re* Shary, 152 B.R. 724 (Bankr.N.D.Ohio 1993) (state's failure to object to transfer of liquor license constituted consent to sale). *Contra In re* Roberts, 249 B.R. 152 (Bankr.W.D.Mich. 2000).

The text in Collier is an accurate statement of the law. Section 363(f)(2) requires consent and that consent may be either express or implied. However, the cases cited in Collier, fn.27, and particularly the parentheticals used to describe the holdings in the cases, are not apt. They suggest that in addition to express or implied consent, silence is consent. It is this proposition – that silence is consent – upon which the trustee relies. He is mistaken.

The common denominator of the cases cited by Collier and relied upon by the trustee is their procedural posture. In each case, a sale free and clear of interests was approved by the bankruptcy court and the party who held the interest later sought to collaterally attack the free and sale order. In a collateral attack of an order, the issue ought to be whether the order was void, not whether it was correct. *See Eberhardt v. Integrated Design & Const., Inc.,* 167 F.3d 861, 870- 872 (4th Cir. 1999); *Schwartz v. United States,* 976 F.2d 213, 217 (4th Cir. 1992) (relief under Fed.R.Civ.P. 60(b)(4) available only if judgment is void, not because it is erroneous); *Baumlin & Ernst, Ltd. v. Gemini, Ltd.,* 637 F.2d 238, 242 (4th Cir. 1980) (error by trial court not sufficient to vacate an order;

only a voidable order may be attacked collaterally).  It is, in a sense, not surprising that none of the cases cited relate to the hearing and decision on the motion to sell free and clear in the first instance. If the interested party appears at the hearing on the motion to sell and objects, it is fairly obvious he does not consent and that §363(f)(2) is not applicable.  It is only when he is absent that the proponent of the motion must prove that the interested party in fact consents to the sale free and clear.  If that factual finding is made but is erroneous, or the interested party simply does not like the outcome of the sale, his only remedy is to collaterally attack the order to sell free and clear.[5] While issues of service and notice may form the basis for such an attack, the correctness of the finding that he consented may not.

*FutureSource LLC v. Reuters Ltd.,* 312 F.3d 281 (7th Cir. 2002) was such a collateral attack. It was a diversity suit, not a bankruptcy case.  *Id.* at 283.  It related to a bankruptcy case in which Bridge Information Services was the debtor.  Two years before filing bankruptcy, Bridge and FutureSource entered into an Intercompany Service Agreement (ISA).  Bridge purchased news and financial data from Reuters.  Under the ISA, Bridge sold consolidated, rearranged and reformatted financial-markets data to FutureSource and the software necessary to download it by FutureSource's customers.  During Bridge's bankruptcy, it sold most of its assets to Reuters free and clear of all liens and interests.  Neither the ISA nor Bridge's right to receive royalties from FutureSources under the ISA was included in the sale.  These assets, the ISA and the right to receive royalties under the ISA, were later sold to a third party, Moneyline, which assumed the ISA.  FutureSource asserted that it had a license to use Bridge's intellectual property and that license could not be extinguished by

---

[5]There are remedies under Fed.R.Bankr.P. 9023 and 9024 (Fed.R.Civ.P. 59 and 60), but the challenges are often long after the order was entered.  The rules themselves impose tight constraints on relief.

the sale of the underlying property. *Id.* at 285. The court found that FutureSource's interest, if any, was of the kind that could be sold under §363(f)(2). Then it stated:

> It is true that the Bankruptcy Code limits the conditions under which an interest can be extinguished by a bankruptcy sale, but one of those conditions is the consent of the interest holder, and lack of objection (provided of course there is notice) counts as consent. It could not be otherwise; transaction costs would be prohibitive if everyone who *might* have an interest in the bankrupt's assets had to execute a formal consent before they could be sold.
>
> And in any event the order approving a bankruptcy sale is a judicial order and can be attacked collaterally only within the tight limits that Fed.R.Civ.P. 60(b) imposes on collateral attacks on civil judgments. FutureSource has made no effort to bring itself within those limits; and now that more than a year has passed since the order was issued, it is doubtful, to say the least, that FutureSource could succeed in such a collateral attack.

*Id.* at 285-286. (Italics in original) (internal citations omitted).

The essential holding was that FutureSource was too late. Whether the bankruptcy court's order to sell free and clear was right or wrong – whether "lack of objection (provided of course there is notice)" was the proper standard or not – the sale order was final and FutureSource could not collaterally attack it. Its remedy was to seek relief from the order, not to launch a collateral attack. The likelihood of the success or failure of the prospective Rule 60(b) motion did not change the impropriety of the collateral attack.[6]

*Veltman v. Whetzal,* 93 F.3d 517 (8th Cir. 1996) does not support the trustee because the court found, in dicta, that the co-owners consented to the sale of the property. Consent was given at

---

[6]Under §363(f)(2) consent is required only of those with *actual* interests in the debtor's property. Whether all actual interests have been identified and dealt with in accordance with one of the five alternatives under §363(f) is a factual question that must be resolved before a sale free and clear may be authorized. If there is doubt as to whether a party has an interest in the property to be sold, the parties frequently consent to the sale with interest, if any, attaching to the proceeds, thus preserving the status quo. If, however, the parties do not agree to the sale and the dispute as to the interest is a bona fide dispute, consent of the alleged interest holder is unnecessary. 11 U.S.C. §363(f)(4). If the interest is a disputed lien, §363(f)(3) is also available.

various stages of the chapter 11 proceeding and later after the case had been converted to chapter 7. The actual holding was that they had failed to timely appeal. In addition, the properties had been sold and no stay pending appeal had been obtained. *See* 11 U.S.C. §363(m). Collier's parenthetical statement – "failure to object to proposed sale, coupled with agreement to stipulation on authorizing sale free of interest, constituted consent" – goes too far by mentioning the failure to object to the sale. The court found, independent of any failure to object, that consent arose from the co-owners' actual participation in the case in negotiating a stipulation permitting the sale of the properties during the chapter 11 phase of the case and their consent to the chapter 7 trustee selling the properties subject to the stipulation.[7]  *Id.* at 521. The real issue was not the sale, but the distribution of the proceeds of sale. *Id.*

*Citicorp Homeowners Services, Inc. v. Elliot (In re Elliot),* 94 B.R. 343 (E.D.Pa. 1988) is also a case in which the affected lienholder filed a complaint to set aside a sale free and clear of liens after the sale was completed. Citicorp received notice of the proposed sale before the chapter 7 trustee's public auction and did not appeal the post-sale order confirming the sale. The bankruptcy court refused to set aside the sale. The district court affirmed, rejecting all of Citicorp's arguments. The district court stated:

> Citicorp consented to the sale by failing to make any timely objection after receiving notice of the sale. Citicorp contends that implied consent is insufficient to satisfy the consent requirement of §363(f)(2). I disagree.

---

[7]The case presented a challenging scenario. The debtor and the co-owners owned 15 undeveloped lots which were apparently encumbered by a single mortgage. Undeveloped lots are more easily partitioned than a single house. Each co-owner can simply take sole ownership to the appropriate number of lots. The co-owners in this case requested the bankruptcy court to partition the lots. The problem was the mortgage. The bank would be paid from the first proceeds available. If the lots were partitioned, it became important who sold his lots first, especially since one of the parties was insolvent. The stipulation resolved these issues. It allowed the sale of lots with an agreed upon distribution of proceeds between the bank and the parties.

9

*Id.* at 345. The statement, however, is supported only by citing *In re Gabel,* 61 B.R. 661 (Bankr.W.D.La. 1985). It is not otherwise discussed. The proposition that consent may be implied is not in issue in the case before this court, only whether silence is implied consent. In *Elliot,* the issue was whether there were grounds to set the sale order aside. The opinion reflects none. If the bankruptcy court was factually wrong in construing silence as consent, Citicorp should have appealed the decision, not have attacked it collaterally later. When attacked collaterally, the issues are whether the bankruptcy court had jurisdiction to enter the order, whether the parties were properly before the court, whether the order was void, or whether there are equitable grounds to avoid the judgment. *See* Fed.R.Bankr.P. 9024 (incorporating Fed.R.Civ.P. 60). The issue is not whether the sale order was erroneous.

*Margrave v. Township of Pemberton (In re T-bone, Inc.),* 175 B.R. 855 (Bankr.D.N.J. 1994) is interesting procedurally. The chapter 7 trustee sold the debtor's real estate free and clear of liens and distributed the proceeds to the various secured creditors which included the township. Later, the trustee discovered that the estate was administratively insolvent and sought, by utilizing §724(b), to recover the money he had paid to the township for taxes. Section 724(b) permits a trustee to avoid certain tax liens. The recovery would then be available to pay the administrative expenses. The township objected, asserting among other reasons that the trustee did not have the authority to sell the property free and clear of liens. The bankruptcy court rejected this argument, noting that the trustee was authorized to sell the property free and clear of liens under §363(f)(2) and (f)(3). With respect to §363(f)(2) it stated that, "As the Township did not offer any objection, it may be deemed to have consented to the sale for purposes of section 363(f)(2)." *Id.* at 858. It then went on to find that §363(f)(3) applied because the sale was for more than the aggregate value of all the liens.

"We conclude that under either provision, the trustee was authorized to sell this property free and clear of all liens." *Id.* at 858. Section 363(f)(3) was clearly applicable and resolution of the §363(f)(2) issue was unnecessary. In any event, the correctness of either the §363(f)(2) or (f)(3) finding was irrelevant. The township in defending against the §724 motion had to show that the sale order was void. It was not. The real issue was not the validity of the sale order, but whether the trustee was precluded from later seeking to avoid the township's lien. The propriety of the sale order was not in question, only its effect on the trustee's later §724(b) avoidance action.

The last case cited is *In re Shary,* 152 B.R. 724 (Bankr.N.D.Ohio 1993). In this case the chapter 7 trustee was authorized to sell all of the debtor's assets free and clear of liens. One asset was a liquor license. The assets, including the liquor license, were sold and the sale confirmed without objection by the State of Ohio. The state would not transfer the liquor license because there were unpaid presale tax obligations. The trustee sought an order to compel the state to transfer the liquor license. The court stated:

> Having remained silent during the sale confirmation process, the State cannot be presently heard meritoriously in opposing the transfer of the liquor license. To the extent that the State may have possessed a valid security interest in any of the property sold, without a sustained objection, such interest was transferred to the proceeds of sale. Moreover, the State's failure to object to the sale, or the confirmation of the sale, implicitly conveyed its consent to the sale as found under §363(f)(2).

*Id.* at 725. Once again, a sale free and clear of liens was authorized by the bankruptcy court and challenged afterwards. The thrust of the state's objection was not the sale itself, but that it had not been paid its presale taxes that were an encumbrance. As the court noted, the state's lien was transferred to the proceeds of sale. At this point, it was too late to collaterally attack the sale order and the court's comment that the state's failure to object to the sale was dicta.

The trustee places uncritical reliance on the cases cited in Collier. When reviewed in context, the statements that silence is consent are dicta. Each case is a collateral attack on a prior order of the court authorizing the sale free and clear of liens and interests. It is not enough to show that the court was factually wrong, that is, a party the court found consented to the sale did not consent to the sale. Instead, the party must show that it is entitled to relief from the erroneous order under Fed.R.Bankr.P. 9023 or 9024 which incorporate Fed.R.Civ.P. 59 and 60 or otherwise in a separate proceeding.[8]

The trustee also relies on *Pelican Homestead v. Wooten (In re Gabel),* 61 B.R. 661 (Bankr.W.D.La. 1985) which is generally relied upon the cases cited in Collier, fn. 27. There the lienholder sought to vacate the order to sell free and clear apparently under Fed.R.Civ.P. 59. The court found that the lienholder received proper notice of the proposed sale and was "estopped to deny its implied consent at this late stage." *Id.* at 667. There is little discussion of the issues: whether failure to object is consent; whether silence is implied consent; and whether the doctrine of estoppel was applicable. *Roberts* is more persuasive in its discussion of consent.

The trustee also presented a recent order entered by another judge of this court that recites that the failure to object to the motion was consent. *Thoroughbreds Grill & Brewing Co., LLC,* Case No. 06-10645-SSM (Bankr.E.D.Va. Aug. 11, 2006). The order, prepared by counsel[9] and entitled "Order Approving Bidding Procedures and Sale," recites the following finding:

---

[8]There are ramifications arising from setting aside an order authorizing the sale of property. If the sale order is vacated or modified, provision should be made to protect the buyer and return the parties to the *status quo ante*. Section 363(m) protects a sale if the sale order is reversed or modified on appeal; however, a collateral attack is not an appeal and §363(m) may not be applicable.

[9]The trustee and counsel in Thoroughbreds Grill & Brewing Co., are the same as in this case.

Case 05-11844-RGM   Doc 47   Filed 09/22/06   Entered 09/22/06 14:17:32   Desc Main
                         Document     Page 13 of 15

> 9. The Trustee may sell the Debtor's assets free and clear of all interests of any kind or nature because, in each case, one or more of the standards set forth in §§363(f)(1)-(5), 105(a) and 365 of the Bankruptcy Code has been satisfied. Holders of interest in the debtor's assets who did not object to the sale are deemed to have consented pursuant to §363(f)(2) of the Bankruptcy Code.

*Id.* Order, ¶9.

A review of this court's docket casts doubt on counsel's interpretation of the order. The order does not state *which* provision of §363(f) is applicable. It only says that "one or more of the standards set forth in §§363(f)(1)-(5), 105(a) and 365 of the Bankruptcy Code has been satisfied." This leaves open which one was satisfied. Leaving aside §§105(a) and 365 which are not relevant to the motion before the court, the court's docket makes clear that §363(f)(1), (3) and (5) were wholly inapplicable, leaving only §363(f)(2) and (4) as possible bases for the sale.

Thoroughbreds' petition was filed on June 20, 2006. The proposed sales price for the assets exceeded all scheduled liens except for two: Burke Homes Corporation for claims incurred from April to December 2005, and Burke Realty Capital LLC for claims incurred from August 26, 2005 to April 1, 2006. The claims were scheduled as $14,508.85 and $416,963.43, respectively. *Thoroughbreds Grill & Brewing,* Schedule D (Docket Entry 19). The answer to question 10 on the Statement of Financial Affairs reflects that there were transfers to Burke Homes Corporation and Burke Realty Capital LLC on May 30, 2006. The transfers were security interests encumbering all the debtor's assets. One member of the debtor is Brian C. Burke, Sr., who owns 71.46% of the debtor. *Id.* Statement of Financial Affairs, Question 10 (Docket Entry 19). He is the debtor's designee and signed the Schedules and the Statement of Financial Affairs.

The trustee filed an adversary proceeding on July 24, 2006, against Burke Homes Corporation, Burke Realty Capital LLC, and others. It seeks to recover preferences. It alleges that

the two entities are insiders and that Burkes Realty Capital's financing statement was filed on June 19, 2006 – the day before the filing of the petition – and that Burke Homes' financing statement was filed on June 20, 2006 at 2:03 p.m. – 3½ hours after the filing of the petition.

It is readily apparent from the record that §363(f)(4) is the applicable provision of §363(f) for authorization of the sale free and clear. The Burke Homes and Burke Realty liens, the two in question, were the subject of a bona fide dispute. 11 U.S.C. §363(f)(4). An adversary proceeding addressing them was pending when the court heard the motion to sell and when the sale order was entered.

The hearing on the motion to sell free and clear was held before another judge of this court and this judge is unaware of what evidence was taken or proffered or of the nature of the arguments made. No written opinion or transcript of the proceedings was presented by counsel to support his interpretation of the order. It is possible that the evidence supported the conclusion that Burke Homes and Burke Realty implicitly consented to the sale free and clear of their liens. In any event, since the order stated that at least one prong of §363(f) applied and §363(f)(4) clearly applies, whether §363(f)(2) was also applies is not material and the order presented by the trustee offers scant support for his proposition that silence is consent under §363(f)(2).[10]

The trustee argues in the alternative that the pending adversary proceeding which seeks to avoid what is now known to be a nonexistent transfer from the debtor to Chevez shows that there is a bona fide dispute under §363(f)(4). There are, however, no allegations in the pending adversary

---

[10]As indicated above, there are two published opinions of this court holding that silence is not consent. *See In re Silver,* 338 B.R. 277, 280 (Bankr.E.D.Va. 2004) and *In re Takeout Taxi Holding, Inc.,* 307 B.R. 525, 534 (Bankr.E.D.Va. 2004).

14

proceeding that support any other relief and at the hearing counsel proffered none that were sufficient to raise a bona fide dispute.

## Conclusion

The trustee's motion to sell free and clear will be denied because Chevez has not consented to the sale and there is no bona fide dispute as to his ownership interest in the property. Chevez' silence is not consent.

Alexandria, Virginia
September 22, 2006

/s/ Robert G. Mayer
Robert G. Mayer
United States Bankruptcy Judge

copies to:

H. Jason Gold
Joel S. Aronson
Todd S. Baldwin
Frank Bove

13153