# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:

WALTER A. RUBIN DECELIS,   Case No. 05-11844-RGM
                           (Chapter 7)
    Debtor.

## MEMORANDUM OPINION

THIS CASE is before the court on the motion for relief from stay filed by Saxon Mortgage Services, Inc. The motion was filed September 14, 2005. The chapter 7 trustee opposed the motion asserting that there was equity in the property and that the equity adequately protected Saxon Mortgage. He requested 120 days to sell the property and an additional 60 days within which to close on the contract. The hearing was continued ten times at the trustee's request and with the consent of Saxon Mortgage. The trustee did not appear at the last continued hearing and Saxon Mortgage requested that its motion be granted. The motion must now be granted.

## Background

On July 18, 2005, prior to Saxon Mortgage filing its motion, the trustee filed a complaint to avoid an allegedly fraudulent conveyance from the debtor to Carlos Chevez and a later transfer to two others. The two other defendants conveyed the property back to the debtor and Chevez, thus effectively restoring the *status quo ante* immediately before the conveyance to them. The trustee obtained a default order avoiding the alleged fraudulent conveyance from the debtor to Chevez on March 17, 2006. With the default order in hand, the trustee marketed the property and obtained a sales contract which was approved by the court on June 28, 2006.

1

As it turns out, the trustee never obtained a title report for the property. The closing officer obtained a title report and found that the debtor had never transferred the property to Chevez. In fact, the debtor and Chevez jointly purchased the property. The closing officer questioned the effect of the order avoiding the non-existent transfer from the debtor to Chevez. Settlement was postponed while the trustee sought to correct the problem by selling the property free and clear of Chevez' interest under Bankruptcy Code §363(f). The motion was denied. Memorandum Opinion (Docket Entry 47). The sale has apparently been lost.

## Discussion

Section 362(d)(1) requires that the court grant relief from the automatic stay for cause. Cause "includes" but is not limited to lack of adequate protection. In this case, the trustee's sole interest in the property is to sell it. "By selling the Property, the Trustee will recover funds that he is otherwise unlikely to recover." Memorandum of Points and Authorities In Support of Motion to Approve Sale, ¶2 (Docket Entry 36). If the trustee's objective cannot be reasonably achieved, that is, a sale of the property will not result in a meaningful distribution to unsecured creditors, cause exists for relief from the automatic stay.[1] The trustee's response to Saxon Mortgage's motion for relief from the stay set out the proper analysis: "[A]fter deducting the commission and costs of sale, there should be sufficient money to pay [Saxon Mortgage] and other lienholders in full and make a distribution to the unsecured creditors." Trustee's Response to Motion to Lift Stay, ¶4 (Docket Entry 24). His June 2, 2006 Memorandum of Points and Authorities in Support of Motion to Approve Sale (Docket Entry 36) contained a more exact calculation. He stated:

---

[1]The debtor did not respond to the motion. He did not claim the property exempt and stated that he intended to surrender it.

     5.     The expected distribution of the sales proceeds is as follows:

| | |
|---|---:|
| Sales Price | $480,000.00 |
| Less Commission | $28,800.00 |
| Net Price | $451,200.00 |
| Est. Closing Costs | -$4,800.00 |
| Mortgages | -$365,000.00 |
| Homestead exemption | $0.00 |
| Trustee Fee's | -$26,750.00 |
| **NET** | **$54,650.00** |

Memorandum of Points and Authorities, ¶5.

On closer examination, and with the passage of time, it no longer appears that a sale will result in a significant distribution to unsecured creditors.[2] Utilizing the trustee's analysis, the present projected net proceeds is much smaller.

| | |
|---|---:|
| Sales Price | $480,000.00 |
| Less Real Estate Commission[3] | $ 28,800.00 |
| Net Price | $451,200.00 |
| Est. Closing Costs | $ 4,800.00 |
| Mortgages[4] | $400,000.00 |

---

[2] This case is potentially more interesting than it first appears. In reviewing the file, the court notes that JP Morgan Chase Bank filed a secured proof of claim for $91,811.61 with interest at the rate of 10%. It states that the debt was incurred on July 26, 2004, which is the same day as Saxon Mortgage's note and deed of trust. It has the earmarks of a second trust. In addition to the terms of the two notes and the dates they were made, the debtor and Chevez purchased the property for, presumably, between $450,000 and $480,000. The total of the two notes is about $450,000. Without a second trust, the debtor and Chevez would have had to make a down payment of about $90,000. That is a large down payment, particularly where the debtor states that his income for 2003 was $14,000.00 and for 2004 was $17,000.00. Statement of Financial Affairs, Question 1 (Docket Entry 1). If the JP Morgan Chase Bank debt is a second trust on the property in question, it would explain why the debtor did not claim it exempt and stated his intent to surrender it. With both the Saxon Mortgage and JP Morgan Chase Bank notes as first and second trusts, there would be no equity in the property. JP Morgan Chase Bank was not listed as a creditor and the proof of claim did not identify the bank's collateral.

[3] Computed as 6% of the sales price.

[4] Saxon Mortgage's motion for relief from stay states that the principal balance due as of September, 2005, was $364,582.38; that late charges are $116.30 each; and that additional costs in the bankruptcy proceeding are $800.00. The principal balance appears to be approximately correct. The note was made on July 26, 2004, in the original principal amount of $368,000.00. It is an adjustable rate note with the initial interest rate of 6.5% which was fixed until August, 2006. Interest from the date of the filing of the petition on May 12, 2005 through October 12, 2005 (17 months) at 6.5% is $33,571.96. During this period there were seven missed payments. The late charges for these payments total $1,977.10. Consequently, the total payoff as of October 12, 2005, is approximately $400,131.44. The payoff probably is higher because there was a pre-petition arrearage although Saxon Mortgage's counsel did not know the amount at the
(continued...)

|  |  |
|---|---|
| Homestead exemption | $ 0.00 |
| Trustee's Fee | $ 27,250.00 |
| Real Estate Taxes[5] | $ 4,800.00 |
| **Net Proceeds** | **$14,350.00** |

When these additional expenses are taken into account, if the trustee were to sell the property today, he would net about $14,350.00.[6]

This computation of net proceeds after a sale by the trustee does not take into account pre-petition arrearages, interest that will accrue between October 12, 2006 and the date Saxon Mortgage is actually paid off, additional administrative expenses likely to be requested, that is the trustee's attorney's fees, or the risk that the property value will decline.[7]

The risk of a decline in the property value must be considered. The real estate market is changing. For the past several years, prices have appreciated at an unusually rapid rate. That

---

[4](...continued) time of the hearing. There are likely additional bankruptcy costs in light of the ten continuances.

The trustee did not account for a potential pre-payment penalty in his original analysis. A rider to the note which was attached to Saxon Mortgage's motion for relief from stay provides for a 2% pre-payment penalty within the first 24 months which expired July 25, 2006. During most of the time that the trustee was seeking to sell the property, the pre-payment penalty was likely to have been asserted. The two-year period has now expired and no pre-payment penalty appears to be due.

[5] The trustee did not take into account real estate property taxes. It is not likely that real estate property taxes were paid by the debtor. The court estimates them to be at least $4,800.00. To the extent that Saxon Mortgage advanced funds to pay the real estate taxes, the amount would be added into its pay-off.

[6] The principal difference between the court's computation to the estate and the trustee's is the payoff. The trustee estimated that the payoff was $365,000.00. What he neglected to consider was accruing interest, late charges and real estate taxes. The difference between the payoff computed by the court and by the trustee is about $35,000.00 and accounts for approximately 2/3 of the trustee's estimated net proceeds.

[7] The court's computation assumes that the trustee would recover Chevez' one-half interest which appears problematic. It presently appears that Chevez is the debtor's co-owner, not his transferee. The factual predicate for recovering Chevez' interest is not clear. This is not an issue that concerns Saxon Mortgage or its equity cushion because it has a lien on the entire property. It does affect the trustee as the resolution determines whether the estate is entitled to all of the net proceeds of sale or only half.

appears to have ended and the question now is what lies ahead: Will market prices remain stable, decline slowly or decline precipitately? The trustee recognizes this as well. In his Emergency Motion to Alter or Amend Order of Default, he gave as one reason for his request of an emergency hearing that, "in the current economic environment, the Trustee is unsure whether he would be able to re-list the property and sell it at a price equal to the contract price." Emergency Motion to Alter or Amend Order of Default, ¶7 (Gold v. DeCelis, AP 05-1424-RGM (Docket Entry 38)).

Finally, the court notes that in the trustee's original response of September 18, 2005, he requested 120 days to market the property and an additional 60 days to close. He stated "that if [the trustee] fails to meet either deadline that the stay [would] be lifted". Trustee's Response to Motion to Lift Stay, ¶5 (Docket Entry 24). Although no order was entered effectuating this suggested resolution, the time period is indicative of what the trustee thought was a reasonable marketing period. The trustee has had more than twice the time he sought. The property is not under contract and further litigation is necessary before the trustee may sell it.

The court concludes that the likelihood of the trustee recovering any significant net proceeds from the sale of the property to pay unsecured creditors is not good at this time and the sole purpose for continuing the stay as to the trustee – selling the property for the benefit of unsecured creditors – has been frustrated. This is cause to grant Saxon Mortgage relief from the automatic stay.

Saxon Mortgage is also entitled to relief because adequate protection of its interest cannot be provided by the trustee. The analysis as to Saxon Mortgage is the same in principle as to the trustee, but the computation is a bit different. Its computation is as follows:

                Fair Market Value                              $480,000.00

|  |  |
|---|---|
| Deed of Trust's Trustee Fee[8] | $ 24,000.00 |
| Foreclosure Expenses | $  4,800.00 |
| Payoff[9] | $406,000.00 |
| Real Estate Taxes | $  4,800.00 |
| **Net Proceeds** | **$ 62,000.00** |

This analysis suggests that Saxon Mortgage has an equity cushion of $62,000.00. Taking into account the present market uncertainties and that a foreclosure sale does not usually result in a sale at fair market value but rather at a distress value, the remaining equity in the property – the trustee's profered adequate protection – is insufficient to adequately protect Saxon Mortgage's interest.

## **Conclusion**

Saxon Mortgage's motion for relief from the automatic stay will be granted.

Alexandria, Virginia
October 5, 2006

/s/ Robert G. Mayer
Robert G. Mayer
United States Bankruptcy Judge

Copy electronically to:

H. Jason Gold
Joel S. Aronson
James Collins
United States Trustee

13189

---

[8] Computed at 5%.

[9] The court allowed 90 days within which to complete a foreclosure sale.